HAROLD CARLSON *v.* CHARLENE CARLSON.

[No. 1269A254. Filed February 22, 1971.]

*John Hovanec*, of Gary, for appellant.

*Armand Prete*, of Gary, for appellee.

ROBERTSON, J.—This is an appeal from a default divorce judgment. Appellant and appellee consulted an attorney regarding a separation from bed and board, which was then filed by the attorney who was consulted by the parties, on behalf of the appellee. The complaint was later amended to one for absolute divorce, with alias summons being served at the last and usual place of residency. The divorce was granted by a judge pro tempore on the 7th of May, 1969, at a default hearing. Findings and judgment consistent therewith were made which included the divorce, awarding the real property of the parties to the appellee, and requiring the appellant to pay upon certain obligations incurred by the parties during their marriage plus $2500 alimony to be paid over a period of time, and a further finding the appellant guilty of contempt on a citation that had been previously filed and was tried with the case in chief.

Appellant learned the divorce had been granted when making a payment of attorney's fees to the attorney who handled the case. Appellant then timely filed a petition labeled as a Motion to Set Aside a Default Judgment. Argument was held on June 25, 1969, before the judge pro tempore who had granted the divorce, but no ruling was made on the motion at that time except to order briefs filed. Appellant also filed a Motion for a Change of Venue from the regular judge of the court at the same time.

Appellee, approximately one week later, filed before the regular judge a Motion to Expunge the Record made by the judge pro tempore (regarding the hearing to set aside the default judgment). The regular judge sustained the motion and found the judge pro tempore had no further jurisdiction, the regular judge then named a panel of judges from which a special judge was selected. The appellee then filed a Motion to Dismiss the Petition to Set Aside the Default Judgment on the grounds the appellant had remarried, to which appellant filed a Motion to Strike. At the hearing on the motions, the special judge sustained the appellee's Motion to Strike.

The record further discloses that the appellee filed a Motion to Dismiss or Affirm on the theory that the appellant had accepted part of the benefits of the judgment of the trial court in that he had remarried. The motion, by prior action of the Appellate Court, was overruled.

The appellant, in his assignment of errors, sets forth the following as being error by the trial court:

"1) The Court failed to grant Appellant's Change of Venue from the Judge.

"2) The Court erred in granting Appellee's OBJECTIONS TO THE JURISDICTION OF AND PETITION TO STRIKE AND EXPUNGE FROM THE RECORDS, ENTRIES MADE BY FORMER JUDGE PRO TEM, of July 3, 1969.

"3) The Court erred in granting Appellee's MOTION TO DISMISS DEFENDANT'S PETITION TO SET ASIDE DEFAULT JUDGMENT, of October 23, 1969, and refusing to allow Appellant's testimony to issue of alimony and Court Orders entered at the time of the divorce, even though Appellant remarried.

"4) The Court erred in refusing to hear evidence of Appellant relating questions of alimony and Court Orders regarding Appellant's Petition of November 26, 1969, after Appellant remarried.

"5) The Court erred in granting Appellee's PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S PETITION, of December 10, 1969, and refusing to allow Appellant's testimony relating to issue of alimony and Court

Orders entered at the time of divorce, even though Appellant remarried.

"6) The Court erred in refusing to allow Appellant to testify regarding issue of alimony and Court Orders entered at the time of the divorce.

"7) That the decision of the Court is contrary to law."

The appellee maintains that the subsequent remarriage of the appellant estops action by the appellant in questioning the provisions of the divorce decree and the subsequent proceedings.

It is with the latter proposition we must agree. There are situations in which a judicial review of a divorce judgment may exist, as in the case of fraud, *Holmes* v. *Holmes* (1969), 145 Ind. App. 52, 248 N. E. 2d 564, and authorities cited therein.

In that case the wife who had been undergoing treatment for alcoholism for approximately ten years, was picked up by her husband from a mental institution and was taken to an attorney who had been in the employ of the husband in the past. On the way to the attorney's office, including a lunch stop wherein the parties consumed alcoholic beverages, terms of a property settlement were discussed. The husband had the attorney incorporate the proposed terms into a document that later served as the basis for division of the property of the parties. In spite of an awareness by the attorney of the wife's problem with intemperance; in spite of his failure to give her independent legal counsel although he was her attorney of record; and in spite of the apparent one-sidedness of the division of property in favor of the husband, a divorce was obtained by means of a default judgment.

The obvious permeation of fraud throughout the entire proceedings necessitated this court to act accordingly. The *Holmes* case, *supra,* is easily distinguishable from the instant case. The appellant here has failed to put himself in a similar category by the record as it exists in this court.

The question of the acceptance of benefits of a divorce de-

cree was recently set out by Justice Hunter in the case of *O'Connor* v. *O'Connor* (1969), 253 Ind. 295, 253 N. E. 2d 250, at p. 252, in which he said:

> "It is the considered opinion of this court that to constitute an acceptance of the benefits of divorce so as to preclude an appeal, the benefits 'accepted' must be of such nature as to clearly indicate an intention on the part of that spouse to be bound by the divorce decree. Remarriage is without doubt an acceptance of the benefits which clearly falls within the rule."

The statement, as well as the appellee's position, is further fortified by Justice Jackson, commenting in a similar case:

> "The appellant of his own volition, by his own acts, placed himself in the position he now occupies." *Sidebottom* v. *Sidebottom* (1968), 249 Ind. 572, at p. 29; 233 N. E. 2d 667, at p. 672.

It may be noted in passing, however, that the factual situation arising in this case, namely, the supposedly apparent desire of a client to save an additional legal fee, and the attorney who advises, but not necessarily represents, the opposing sides in a divorce, can only expect the vexatious condition which no doubt exists between the parties and the attorneys herein. It is a practice which, at best, is harmful to the bar as a group, and to the attorney and client as individuals. Whether or not the appellant should seek his legal remedy, if any he may have, in another direction will not be commented upon.

Furthermore, the ever present requirement of an attorney to comply with the spirit and letter of his professional responsibilities cannot be ignored. As stated in our recently adopted Code of Professional Ethics:

> "If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should

resolve all doubts against the propriety of the representation." Code of Professional Responsibility, Canon 5, EC5-15.

A similar thought is contained in the Canons of Professional Ethics, a document that every attorney should be familiar with:

> "It is unprofessional to represent conflicting interests, except by *express* consent of all concerned given after a full disclosure of the facts." (Emphasis added) Canons of Professional Ethics, Canon 6.

Even though by holding that any defects that did occur are now deemed waived as a result of the above findings, we will nevertheless address ourselves to the procedural questions raised by the appellant.

The keystone of appellant's assignment of procedural errors is the authority of a regular judge to act after a timely motion for a change of venue has been filed. The authorities cited in 17 Ind. Law Encyc., Judges, § 44, p. 104, state that once the motion is properly filed the court has no discretion in the matter and must grant the change. The only jurisdictional remnant the court has is the granting of the change of venue:

> "He has no jurisdiction . . . to change any of the records he may have made. . . ." 17 Ind. Law Encyc., *Judges,* § 43, p. 103, and authorities cited therein.

A secondary issue raised by the appellant in his motion to set aside a default, in fact, should have been treated as a motion for new trial. This is without merit since a motion for a new trial is not appropriate where a judgment by default exits, as in this case. *State ex rel. Lawson* v. *Stodola* (1949), 82 N. E. 2d 896, 226 Ind. 631.

Regardless of the fact that appellant did raise a procedural question of merit, the subsequent remarriage of the appellant prevents his further pursuit of questioning the findings of the trial court.

The judgment of the trial court is affirmed.

Sullivan, P.J., concurs; Buchanan and Lowdermilk, JJ., concur.

NOTE.—Reported in 266 N. E. 2d 807.